IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- :
TAKEDA PHARMACEUTICALS : 
U.S.A., INC., :
 :
Plaintiff, :
 : C.A. No. 19-2216-RGA
v. :
 :
MYLAN PHARMACEUTICALS INC., :
 :
Defendant. :
 :
----------------------------------------------------------------- :

## TAKEDA'S ANSWERING BRIEF TO
## PAR PHARMACEUTICAL, INC.'S MOTION TO INTERVENE

Francis DiGiovanni (No. 3189)
Thatcher A. Rahmeier (No. 5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

*Of Counsel:*

Edgar H. Haug
Porter F. Fleming
Nicholas F. Giove
HAUG PARTNERS LLP
745 Fifth Avenue, 10th Floor
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
pfleming@haugpartners.com
ngiove@haugpartners.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii

I.       Introduction ................................................................................................................1

II.      Nature and Stage of the Proceedings ........................................................................2

III.     Summary of Argument ...............................................................................................3

IV.      Statement of Facts .....................................................................................................3

V.       Argument ...................................................................................................................5

         A.      The Court Should Not Permit Par to Intervene to Assert
                 Infringement of the Patents-in-Suit ...............................................................6

                 1.      Par Lacks Standing to Assert Infringement of the Patents-
                         in-Suit ..................................................................................................6

                 2.      Intervention as a Matter of Right Should Be Denied
                         Because Takeda Will Adequately Represent Par's Interests .....................8

         B.      Par Should Not Be Permitted to Intervene to Assert Its Claims of
                 Tortious Interference and Unfair Competition—Claims That Are
                 Not in the Present Suit and Would Require Different and Extensive
                 Discovery ....................................................................................................11

                 1.      Par Improperly Seeks to Intervene as a Matter of Right by
                         Injecting New Claims Into This Case .......................................................11

                 2.      Par's Motion for Intervention Based on Its Proposed Tort
                         Claims Is More Complex and Would Require Extensive
                         Discovery Causing Severe Disruption, Further
                         Demonstrating That Par's Motion to Intervene Should Be
                         Denied ..................................................................................................12

VI.      Conclusion ...............................................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Acra Turf Club, LLC v. Zanzuccki,*
    561 F. App'x 219 (3d Cir. 2014) ............................................................................. 10, 12

*Askari v. Pharm. Corp. of Am.,*
    No. 16-1123-RGA, 2018 WL 3768988 (D. Del. Aug. 8, 2018) ...................................... 12

*Benjamin v. Dep't of Public Welfare of Cmwlth.,*
    267 F.R.D. 456 (M.D. Pa. 2010) ................................................................................. 10

*Brody v. Spang,*
    957 F.2d 1108 (3d Cir. 1992) ........................................................................................ 8

*Consumer Fin. Protection Bureau v. Nat'l Collegiate Master Student Tr.,*
    No. 17-1323 (MN), 2018 WL 5095666 (D. Del. Oct. 19, 2018) ..................................... 5

*Corman v. Secretary Cmwlth. of Pa.,*
    751 F. App'x 157 (3d Cir. 2018) ................................................................................... 9

*E.E.O.C. v. Dan Lepore & Sons Co.,*
    No. Civ.A. 03-CV-5462, 2004 WL 240315 (E.D. Pa. Jan. 29, 2004) ........................ 6, 13

*E.E.O.C. v. Victoria's Secret Stores, Inc.,*
    No. Civ.A 02-6715, 2003 WL 21282193 (E.D. Pa. Jan. 13, 2003) ................................. 6

*E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.,*
    248 F. Supp. 3d 570 (D. Del. 2017) ............................................................................. 12

*Elk Grove Unified Sch. Dist. v. Newdow,*
    542 U.S. 1 (2004) ......................................................................................................... 8

*Ethypharm S.A. France v. Abbott Labs.,*
    598 F. Supp. 2d 611 (D. Del. 2009) ....................................................................... 13, 15

*Hoots v. Cmwlth. of Pa.,*
    672 F.2d 1133 (3d Cir. 1982) ................................................................................ 8, 9, 11

*In re Budeprion XL Mktg. & Sales Litig.,*
    No. 09-md-2107, 2012 WL 4322012 (E.D. Pa. Sept. 20, 2012) ...................................... 5

*In re Chemed Corp., Derivative Shareholder Litig.,*
    No. 13-1854-LPS-CJB, 2017 WL 1712530 (D. Del. Apr. 25, 2017) ............................... 5

*In re Schering Plough Corp./Intron/Temodar Consumer Class Action,*
    678 F.3d 235 (3d Cir. 2012) .......................................................................................... 7

*Knowles Elecs. LLC v. Iancu,*
    886 F.3d 1369 (Fed. Cir. 2018) ...................................................................... 7

*Lamprecht v. F.C.C.,*
    958 F.2d 382 (D.C. Cir. 1992) ...................................................................... 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ...................................................................................... 8

*Liberty Mut. Ins. Co. v. Treesdale, Inc.,*
    419 F.3d 216 (3d Cir. 2005) ........................................................................... 8

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.,*
    925 F.3d 1225 (Fed. Cir. 2019) ..................................................................... 8

*Morrow v. Microsoft Corp.,*
    499 F.3d 1332 (Fed. Cir. 2007) ..................................................................... 7

*N. Ins. Co. of N.Y. v. Grone,*
    126 F. Supp. 457 (M.D. Pa. 1954) ................................................................ 13

*N.Y. v. Atl. States Marine Fisheries Comm'n,*
    609 F.3d 524 (2d Cir. 2010) ........................................................................... 14

*Nat'l Collegiate Athletic Ass'n v. Corbett,*
    296 F.R.D. 342 (M.D. Pa. 2013) .................................................................... 10

*Ortho Pharm. Corp. v. Genetics Inst., Inc.,*
    52 F.3d 1026 (Fed. Cir. 1995) ....................................................................... 7

*Stauffer v. Brooks Bros., Inc.,*
    619 F.3d 1321 (Fed. Cir. 2010) ..................................................................... 6

*Town of Chester, NY v. Laroe Estates, Inc.,*
    137 S. Ct. 1645 (2017) .................................................................................. 7

*Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.,*
    587 F.3d 1375 (Fed. Cir. 2009) ..................................................................... 6

*United States v. Alcan Aluminum, Inc.,*
    25 F.3d 1174 (3d Cir. 1994) ........................................................................... 5

*WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.,*
    49 A.3d 1168 (Del. 2012) .......................................................................... 13, 14

*WiAV Solutions LLC v. Motorola, Inc.,*
    631 F.3d 1257 (Fed. Cir. 2010) ..................................................................... 6

**Statutes**

35 U.S.C § 281 ................................................................................................................... 8

**Rules**

Fed. R. Civ. P.  24(a) ...................................................................................................... 11

Fed. R. Civ. P.  24(a)(2) ............................................................................................ 2, 5, 12

Fed. R. Civ. P.  24(b)(1)(B) ....................................................................................... 2, 3, 5

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 8

Fed. R. Civ. P. 24(b)(3) ..................................................................................................... 5

## I.    INTRODUCTION

Plaintiff Takeda Pharmaceuticals U.S.A., Inc. ("Takeda") submits this brief in opposition to Par Pharmaceutical, Inc.'s ("Par") motion to intervene (D.I. 26-27). Par seeks to intervene as a plaintiff to allege against Mylan: (i) infringement of the Patents-in-Suit (Counts III-XIX); (ii) tortious interference with contractual relations (Count I); and (iii) unfair competition (Count II). D.I. 26-27.

Par's motion is extraordinary. Par is merely a non-exclusive licensee of U.S. Patent Nos. 7,906,519; 7,935,731; 8,093,298; 7,964,648; 8,093,297; 7,619,004; 7,601,758; 7,820,681; 7,915,269; 7,964,647; 7,981,938; 8,093,296; 8,097,655; 8,415,395; 8,415,396; 8,440,721; and 8,440,722 (collectively, the "Patents-in-Suit"). Nevertheless, Par asks this Court to allow Par to intervene as a plaintiff to assert infringement of the Patents-in-Suit, which are owned by Takeda. Par's request flies in the face of longstanding Federal Circuit case law, which is unambiguous that nonexclusive licensees have no Article III standing to assert infringement of their licensed patents. Glaringly, Par makes no mention of how it can possibly have standing to assert patent infringement. Moreover, even if Par had standing to assert patent infringement as a nonexclusive licensee, Par has not shown why Takeda does not adequately represent Par's interests in excluding others from practicing the Patents-in-Suit.

Equally untenable is Par's request to intervene to assert state-law tort claims against Defendant Mylan Pharmaceuticals Inc. ("Mylan"). Par seeks to inject claims of tortious interference with contract and unfair competition based upon: (i) a contract between Takeda and Par; (ii) contracts between Par and other third parties; and (iii) alleged prospective business relationships between Par and other third parties. Par's proposed claims bear no resemblance to the dispute between Takeda and Mylan, which is based upon an entirely different set of agreements: the agreements between Takeda and Mylan. It is improper for an intervenor to

1

inject these types of new claims into a case. But even if the introduction of new claims were not categorically barred, it would nevertheless be inappropriate to allow Par to do so here. Par's state-law tort claims require different proofs than Takeda's claims, and would require extensive discovery—undoubtedly including considerable third-party discovery above and beyond what would be necessary to the dispute between Takeda and Mylan. The discovery necessary to address these new claims by Par—and the attendant discovery disputes that are likely to arise between Par, Mylan, and the third parties—would slow the progress of this case, causing considerable prejudice to Takeda.

For these reasons, and as explained in more detail below, Par's motion to intervene as of right under Rule 24(a)(2), or, in the alternative, permissively under Rule 24(b)(1)(B), should be denied in its entirety.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

On December 2, 2019, Takeda filed a complaint against Mylan for patent infringement and breach of contract. D.I. 2. Mylan's response to Takeda's complaint is due to be filed on January 10, 2020. D.I. 44 at 1.

On December 5, 2019, Takeda moved for a preliminary injunction against Mylan. D.I. 12-13. Mylan filed its opposition to the motion for a preliminary injunction on December 23, 2019. D.I. 40. Takeda will file its reply in support of the motion for a preliminary injunction on January 10, 2020. D.I. 44 at 1. As of January 10, 2020, Takeda's motion for a preliminary injunction will be fully briefed. The Court has offered January 21, 2020 as the preliminary hearing date, and the parties have informed the Court that they are available on that date.

On December 20, 2019, Par filed a motion to intervene. D.I. 26-27.

## III.    SUMMARY OF ARGUMENT

This Court should not permit Par to intervene in the instant litigation.  As a threshold matter, Par is merely a nonexclusive licensee of the Patents-in Suit, and, thus, Par lacks the requisite standing to assert Counts III-XIX of the Complaint-in-Intervention.  *See* D.I. 27-1, Complaint-in-Intervention Counts III-XIX.

Notwithstanding Par's lack of standing, Par's motion should be denied by this Court for several additional reasons.  *First,* Par's motion to intervene as a matter of right should be denied as whatever interests Par may have are represented adequately by Takeda.  Thus, even if Par had standing to assert patent infringement as a nonexclusive licensee, Par has given no convincing reason why Takeda's pursuit of the above-captioned action does not adequately represent Par's interests in excluding others from practicing the Patents-in-Suit.  *Second*, this Court should also deny Par's motion to intervene permissively under Rule 24(b)(1)(B) as Par's tortious-interference (Count I) and unfair-competition (Count II) claims are wholly different from the counts asserted by Takeda against Mylan in the above-captioned action.  It is improper for an intervenor to inject into this case allegations of different legal harms premised on different legal doctrines and based upon different factual predicates.  Par's new claims arise from a different factual background, containing distinct elements from Takeda's patent-infringement and breach-of-contract claims against Mylan, and thus would require extensive discovery that would unfairly delay the resolution of this case.  Par's motion to intervene should therefore be denied in its entirety.

## IV.    STATEMENT OF FACTS

By way of a November 2017 Settlement Agreement and accompanying License Agreement, Takeda **and Mylan** settled a Hatch-Waxman case involving the Patents-in-Suit.  D.I. 15-1. The License Agreement contains provisions and acknowledgements by Mylan.  The

current dispute between Takeda and Mylan is whether that License Agreement has been breached and whether Mylan has infringed the Patents-in-Suit.   Separately, Takeda **and Par**, in settlement of their own Hatch-Waxman case involving the Patents-in-Suit, entered into agreements that granted Par the right to distribute an authorized generic version of Colcrys® (the "AG Product").   Decl. ¶¶ 4-5.[1]  These agreements also included a nonexclusive license—under the Patents-in-Suit—for Par to market its own ANDA product on a date certain or earlier under specified circumstances (i.e., accelerators).   Decl. ¶¶ 6-7. As Par notes in its brief (D.I. 27 at 4), Par *purchases* AG Product from Takeda.   Contrary to Par's declaration (D.I. 29 ¶ 9), Par does not "sell[] [the AG Product] █████████████████████."   Under these agreements, Takeda and Par share the profits realized from the sale of the AG Product, and Takeda receives a higher proportion of the profit share.   Decl. ¶ 6. Nothing in these agreements grants Par any right to sue third parties for infringing the Patents-in-Suit.

After Takeda filed the present suit against Mylan, Par moved to intervene as a plaintiff, alleging that Mylan's launch of the Mylan ANDA Product constitutes infringement of Takeda's Patents-in-Suit, and additionally alleging tortious interference with contractual relations and unfair competition.   D.I. 26-27. Takeda has made clear to Par on multiple occasions that Par lacks standing to assert infringement of Takeda's patents and that Takeda has not consented to any such assertions by Par. Contrary to Par's representation (D.I. 27 at 2), Takeda has not agreed to any Par supplemental briefing as to Takeda's preliminary-injunction motion.

---

[1] As used herein, "Decl. ¶ ___" refers to the Declaration of Mark J. Buonaiuto, Esq. in Support of Takeda's Answering Brief to Par Pharmaceutical, Inc.'s Motion to Intervene, filed concurrently with this brief.

## V.     ARGUMENT

Par bears the burden of showing that intervention is appropriate.  *See United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 n.9 (3d Cir. 1994); *see also Consumer Fin. Protection Bureau v. Nat'l Collegiate Master Student Tr.*, No. 17-1323 (MN), 2018 WL 5095666, at *3 (D. Del. Oct. 19, 2018) ("The burden to establish a right to intervene falls squarely on the movant."); *In re Budeprion XL Mktg. & Sales Litig.*, No. 09-md-2107, 2012 WL 4322012, at *5 (E.D. Pa. Sept. 20, 2012) ("Whether to allow permissive intervention is left to the discretion of the trial court with the burden resting on the entity seeking to intervene.").  Relevant here, Par has the right to intervene **only** if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  "[F]ailure to prove any one of the criteria is sufficient grounds to deny the motion."  *In re Chemed Corp., Derivative Shareholder Litig.*, No. 13-1854-LPS-CJB, 2017 WL 1712530, at *4 (D. Del. Apr. 25, 2017).  Accordingly, failure to prove a sufficient interest or that existing parties inadequately represent the putative intervenor's interest warrants the denial of a motion to intervene as a matter of right.  Par fails on both points.

Alternatively, this Court may, at its discretion, permit intervention if Par "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  In deciding whether to allow permissive intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  Permissive intervention is not warranted here.

None of Par's proposed claims meet the standards for intervention as of right or permissive intervention.  Accordingly, Par's motion to intervene should be denied.

A.    **The Court Should Not Permit Par to Intervene to Assert Infringement of the Patents-in-Suit**

1.    **Par Lacks Standing to Assert Infringement of the Patents-in-Suit**

Because Par lacks standing to assert infringement of the Patents-in-Suit, Par's motion to either intervene as a matter of right or permissively by this Court, should be denied. "The right to intervene presupposes the presentation of a cognizable claim which the intervenor would have standing to pursue. A motion to intervene will thus be denied where the proposed complaint-in-intervention fails on its face to state a cognizable claim." *E.E.O.C. v. Victoria's Secret Stores, Inc.*, No. Civ.A 02-6715, 2003 WL 21282193, at \*1 (E.D. Pa. Jan. 13, 2003) (citations omitted); *see also E.E.O.C. v. Dan Lepore & Sons Co.*, No. Civ.A. 03-CV-5462, 2004 WL 240315, at \*1 (E.D. Pa. Jan. 29, 2004) (recognizing that "a motion to intervene should be denied when standing is lacking or the complaint fails to present cognizable claims"). As Par notes (D.I. 27 at 7), intervention is generally a procedural matter not unique to patent law, and is therefore governed by the law of the regional circuit. *See Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1328 (Fed. Cir. 2010). However, the question of standing is unique to patent law, and is therefore governed by the law of the Federal Circuit. *See WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263 (Fed. Cir. 2010).

Par bears the burden of establishing standing to sue. *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1378 (Fed. Cir. 2009). Par makes no attempt to meet this burden. As explained below, Federal Circuit case law leaves no doubt that Par lacks standing—both Constitutional and statutory—to assert patent infringement based on Takeda's patents.

It is well-established that a nonexclusive licensee such as Par "'suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with a patentee.'" *WiAV*, 631 F.3d at 1265 (quoting *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031

(Fed. Cir. 1995)).  Indeed, Par lacks—and does not even assert—"exclusionary rights" in the at-issue patents that might give it Constitutional standing to assert a patent-infringement cause of action.  *See, e.g., Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007).  Because Par has no (and has not asserted any) exclusionary rights with regard to the Patents-in-Suit, Par lacks standing to bring patent-infringement claims under the Patents-in-Suit, and therefore lacks Article III standing to bring Counts III-XIX of the Complaint-in-Intervention.  Accordingly, this Court lacks subject-matter jurisdiction over Counts III-XIX of the Complaint-in-Intervention.  *See, e.g., Knowles Elecs. LLC v. Iancu*, 886 F.3d 1369, 1380 (Fed. Cir. 2018) (recognizing that "[a] defect in [Article III] standing is a defect in subject matter jurisdiction"); *In re Schering Plough Corp./Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (recognizing that lack of Article III standing constitutes a defect in subject-matter jurisdiction).

Par's lack of Article III standing deprives it of any right to intervene.  "[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing.  That includes cases in which both the plaintiff and the intervenor seek separate money judgments in their own names."  *Town of Chester, NY v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017).  Here, Par seeks different relief than does Takeda.  *Compare* D.I. 2, Prayer for Relief E-G (seeking an award of damages to Takeda) *with* D.I. 27-1, Complaint-in-Intervention Prayer for Relief d-f (seeking an award of damages to Par).  Accordingly, Par's lack of Article III standing precludes it from intervening as a matter of right.  Moreover, this lack of standing supports denial of permissive intervention as well, because "if intervention as of right is not available, the same reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention as well."  *Brody v. Spang*, 957 F.2d 1108,

1124 (3d Cir. 1992); *see also Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 227 (3d Cir. 2005) (recognizing that the denial of permissive intervention is rarely reversed).

Standing jurisprudence is comprised of two strands. *First*, Article III standing "enforces the Constitution's case-or-controversy requirement[.]" *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). *Second*, statutory standing "ask[s] whether [Par] has a cause of action under the statute." *Lexmark*, 572 U.S. at 128. Because Par is a nonexclusive licensee, it has neither Article III standing nor statutory standing, requiring denial of intervention. The Federal Circuit recognizes that a lack of statutory standing—i.e., when a plaintiff is not a proper "patentee" under 35 U.S.C § 281—warrants dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235-36 (Fed. Cir. 2019). And as discussed above, the failure of a complaint-in-intervention to state a cognizable claim for relief precludes the party from intervening. *See, e.g., Victoria's Secret Stores, Inc.*, 2003 WL 21282193, at *1. Accordingly, Par's lack of standing—whether based on Article III standing or statutory standing—warrants denial of Par's motion to intervene.

### 2. Intervention as a Matter of Right Should Be Denied Because Takeda Will Adequately Represent Par's Interests

In addition to showing that Par has the requisite standing to intervene as a matter of right in the instant litigation, Par also bears the burden of showing that its "interests are not adequately represented by the existing parties." *Hoots v. Cmwlth. of Pa.*, 672 F.2d 1133, 1135 (3d Cir. 1982). Par cannot meet that burden. Contrary to Par's suggestion, Takeda is in a good position to adequately represent any interest that Par has in preventing Mylan from infringing Takeda's patents.

Par acknowledges that "Par and Takeda are presently aligned in seeking to enjoin the sale or marketing of the Mylan ANDA Products[.]" D.I. 27 at 11. This admission is fatal to Par's motion. As the Third Circuit has explained, an intervenor's interests are adequately protected by the parties to the case where the parties' interests are aligned at the time of the proposed intervention—even if the parties' interests previously diverged. *See Hoots*, 672 F.2d at 1135. Because the proposed intervenor "d[id] not allege substandard performance of [the party] or its counsel[,]" the Third Circuit concluded that the proposed intervenor "ha[d] not discharged its burden of establishing that [the party's] representation of its interests was not adequate." *Id.* The Third Circuit further found that because the proposed intervenor's interests "in every manner match[ed] those of an existing party and the party's representation [was] deemed adequate, the district court [was] well within its discretion" in denying permissive intervention. *Id.* at 1136.

*Hoots* is directly on point. As in *Hoots*, Takeda's interests and Par's interest align with respect to the patent-infringement claims: both Takeda and Par seek to prevent Mylan from launching the Mylan ANDA Product in violation of Takeda's patent rights. *Compare* D.I. 2, Prayer for Relief D (seeking injunctive relief for infringement of the Patents-in-Suit) *with* D.I. 27-1, Complaint-in-Intervention Prayer for Relief c (same). Under these circumstances, Takeda adequately represents Par's alleged interests, so Par's motion to intervene should be denied. Par's suggestion that Takeda is somehow an inadequate representative simply because Takeda and Par were formerly adverse parties when they negotiated the contract (D.I. 27 at 11) is irreconcilable with *Hoots* and other case law. *See Corman v. Secretary Cmwlth. of Pa.*, 751 F. App'x 157, 161 (3d Cir. 2018) (nonprecedential) (affirming the denial of a motion to intervene where the putative intervenor "made no showing at all that there is any divergence between his

interests on the one hand and those of the plaintiffs, on the other, or that the plaintiffs cannot devote proper attention to his interests"); *Acra Turf Club, LLC v. Zanzuccki*, 561 F. App'x 219, 222 (3d Cir. 2014) (nonprecedential) (finding it proper to deny intervention where the putative intervenor's interest with respect to the claims in common with the party were adequately represented by the party); *Nat'l Collegiate Athletic Ass'n v. Corbett*, 296 F.R.D. 342, 350 (M.D. Pa. 2013) (denying motion to intervene where the putative intervenor "neither contend[ed] that the named Defendants will not adequately advance their arguments on [the argued] grounds nor that he, if permitted to intervene, would raise different arguments"); *Benjamin v. Dep't of Public Welfare of Cmwlth.*, 267 F.R.D. 456, 463-65 (M.D. Pa. 2010) (denying motion to intervene where the putative intervenor's interests were aligned with—and were therefore adequately represented by—a party to the litigation).

Nevertheless, Par suggests that Takeda does not adequately represent Par's interests because: (i) Par has an "interest in preserving its position as the sole distributor in the generic colchicine market"; and (ii) Par has an interest in protecting its "relationship with the customers and distribution partners affected by Mylan's unauthorized venture into the market." D.I. 27 at 11. Both suggestions lack merit.

As for (i), Par's interest in preserving its position as the sole distributor in the generic colchicine market is aligned with Takeda's interest in preventing Mylan from selling the Mylan ANDA Product in violation of Takeda's rights under the Patents-in-Suit. Par makes no attempt to explain otherwise. Nor could it, considering that under the agreements, Takeda and Par share the net profits realized through Par's sale of authorized generic Colcrys®, with Takeda receiving a higher proportion of the profit share. Decl. ¶ 6. Accordingly, Takeda has every incentive to ensure that Mylan does not sell the Mylan ANDA Product in violation of Takeda's patent rights.

As for (ii), Par's interest in protecting its relationship with its customers and distribution partners has nothing to do with any patent-infringement claim. Rather, this purported interest is relevant only to Par's state-law tortious-interference and unfair-competition claims—claims that are not part of this case. As explained in detail below (*infra* § V.B), those claims are not properly brought by way of intervention. Instead, these state-law tort claims should be brought—if at all—as a separate action against Mylan, not as part of the present dispute between Takeda and Mylan. To hold otherwise would invite any distributor of a brand product—as well as any wholesalers or pharmacies—to seek to intervene in a suit involving a patentee brand pharmaceutical company.

In sum, Takeda adequately represents Par's interests with respect to the patent-infringement claims in this case. Therefore, there is no basis for Par to intervene as a matter of right to assert infringement of the Patents-in-Suit. Moreover, because Takeda adequately represents Par's interests, there is no basis for permissive intervention. *See Hoots*, 672 F.2d at 1136 (upholding the denial of permissive intervention where the putative intervenor's interests were adequately represented by the parties).

**B.  Par Should Not Be Permitted to Intervene to Assert Its Claims of Tortious Interference and Unfair Competition—Claims That Are Not in the Present Suit and Would Require Different and Extensive Discovery**

**1.  Par Improperly Seeks to Intervene as a Matter of Right by Injecting New Claims Into This Case**

Because Par seeks to inject new claims into the case, Par's motion to intervene as a matter of right should be denied. Rule 24(a) intervention as a matter of right "covers any proposed intervenor who, by timely motion, 'claims an interest ***relating to the property or transaction that is the subject of the action***, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing

parties adequately represent that interest.'" *See Acra Turf Club*, 561 F. App'x at 221-22 (citing Fed. R. Civ. P. 24(a)(2)) (emphasis added). As Par makes clear in its Complaint-in-Intervention, the contractual relationships that are the focus of Par's tortious-interference claim *are not* the Settlement Agreement and License Agreement that are the subject of Takeda's claims against Mylan. *See* D.I. 27-1, Complaint-in-Intervention ¶¶ 93-106 (alleging harm from tortious interference based upon Par's relationships with customers and distributors and based upon a contract between Par and Takeda).[2] Accordingly, because Par's claims are focused on different alleged agreements (and alleged prospective relationships) than Takeda's claims, Par's state-law claims are not the same "property or transaction that is the subject of the action" between Takeda and Mylan. Fed. R. Civ. P. 24(a)(2).

> ### 2. Par's Motion for Intervention Based on Its Proposed Tort Claims Is More Complex and Would Require Extensive Discovery Causing Severe Disruption, Further Demonstrating That Par's Motion to Intervene Should Be Denied

This Court should not allow Par to intervene to add its state-law tort claims to this case. There is no reason to allow Par to intervene for the purpose of asserting its state-law tort claims, especially in view of the complex nature of its tort claims and the potential disruption and delay that such intervention would cause to this case. *See Acra Turf Club*, 561 F. App'x at 222 (finding denial of intervention proper where the intervenor's "unrelated claims would delay the proceeding"). As discussed above (*see supra* Statement of Facts), this case concerns the proper

---

[2] Nor could they be. "Under Delaware law, 'only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions.'" *Askari v. Pharm. Corp. of Am.*, No. 16-1123-RGA, 2018 WL 3768988, at *2 (D. Del. Aug. 8, 2018) (quoting *E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*, 248 F. Supp. 3d 570, 575 (D. Del. 2017)). Par is neither a party to, nor an intended third-party beneficiary of, the agreements between Takeda and Mylan.

interpretation of the License Agreement between Takeda and Mylan. Par is neither a party nor an intended third-party beneficiary to this License Agreement.

In sharp contrast to the issue of contract interpretation raised by Takeda's claims against Mylan, Par's claims of tortious interference and unfair competition are far more complex. *First*, Par's tortious-interference claim requires Par to demonstrate: (1) that there was a contract; (2) about which Mylan knew; (3) an intentional act by Mylan that was a significant factor in causing a breach of the contract; (4) that the act was without justification; and (5) the act caused injury. *See WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) (citations omitted). *Second*, to prevail on its unfair-competition claim, Par must show that it: (i) had a reasonable expectancy of entering a valid business relationship; (ii) with which Mylan wrongfully interfered; and (iii) Mylan thereby defeated Par's legitimate expectancy and caused Par harm. *See Ethypharm S.A. France v. Abbott Labs.*, 598 F. Supp. 2d 611, 618 (D. Del. 2009) (citations omitted).

Par's far more complex state-law claims would undoubtedly shift the focus of this litigation from (i) patent infringement and contract interpretation of the License Agreement between Takeda and Mylan to (ii) Par's far-reaching tort claims. "[I]t would contravene federal policy to permit an intervenor to determine the scope and the focus of litigation". *Dan Lepore & Sons Co.*, 2004 WL 240315, at *3-4 (refusing to permit a putative intervenor to bring into the case state-law claims that were not part of the original action); *see also N. Ins. Co. of N.Y. v. Grone*, 126 F. Supp. 457, 458 (M.D. Pa. 1954) ("I can find no authority in Rule 24 to grant an intervenor affirmative relief."). As Justice Thomas explained, intervenors generally "may only join issue on a matter that has been brought before the court by another party" and "cannot expand the proceedings." *Lamprecht v. F.C.C.*, 958 F.2d 382, 389 (D.C. Cir. 1992) (Thomas,

Circuit Justice) (citation omitted); *see also N.Y. v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524, 529 n.4 (2d Cir. 2010) (same).  Par offers no justifiable reason why this general rule should not apply here.  To the contrary, Par's different claims and unique requests for relief only reinforce the fact that if Par seeks to bring tort claims against Mylan, Par should bring these claims in a separate suit.  *See* D.I. 27-1, Complaint-in-Intervention Prayer for Relief b, e (seeking relief specifically based upon Mylan's alleged tortious interference with Par's contractual relations and unfair competition with Par).  More importantly, Par's ability to protect its own interest and thus request relief from Mylan by filing a separate suit would not be impaired if the Court denied Par's motion to intervene.  Thus, the Court's resolution of the instant litigation would not hinder Par from seeking monetary damages and/or injunctive relief from Mylan if Par's claims against Mylan have merit.

Additionally, in comparison to Takeda's claims against Mylan, Par's state-law tort claims against Mylan inject different theories into the case, which will require different and far more extensive discovery.  For example, Par's tortious-interference claim will require discovery to determine: (i) the detailed terms of the contracts Par entered into with third parties; (ii) whether and what Mylan knew about any such contracts; (iii) whether Mylan committed an intentional act to interfere with those contracts; (iv) whether that act was without justification; (v) whether any such unjustified act by Mylan was a significant factor in causing the breach of contract; and (vi) whether and to what extent any such act by Mylan caused harm to Par.  *See WaveDivision Holdings*, 49 A.3d at 1174.  Importantly, as is made clear by the Complaint-in-Intervention, the contractual relationships that are the focus of Par's tortious-interference claim ***are not*** the Settlement Agreement and License Agreement that are the focus of Takeda's claims against Mylan.  *See* D.I. 27-1, Complaint-in-Intervention ¶¶ 93-106 (alleging harm from tortious

14

interference based upon Par's relationships with customers and distributors and based upon a contract between Par and Takeda). Accordingly, the discovery needed to address Par's state-law tort claims will have an entirely different focus—and a much greater breadth—than the present case's focus on the proper interpretation of the License Agreement between Takeda and Mylan. Unlike the present case, Par's proposed tortious-interference claim will likely require extensive third-party discovery from Par's customers and distributors. Given the breadth of such discovery—and the attendant discovery disputes that frequently arise when seeking extensive discovery from third parties—Par's proposed tortious-interference claim promises to significantly expand the scope of this case, thus thwarting Takeda's efforts to bring this case to a resolution as quickly as possible.

Par's proposed unfair-competition claim will also require extensive discovery. For example, discovery will likely be required to determine: (i) whether Par had a reasonable expectancy of entering into a valid business relationship; (ii) whether Mylan wrongfully interfered with any such potential valid business relationship; (iii) whether Mylan defeated Par's legitimate business expectancy; and (iv) whether any such interference caused Par harm. *See Ethypharm*, 598 F. Supp. 2d at 618. Like the discovery that will be required for the tortious-interference claim, the unfair-competition claim will likely require extensive third-party discovery. *See* D.I. 27-1, Complaint-in-Intervention ¶¶ 61-69 (alleging that Mylan had communications with Par's customers and distribution partners, causing harm to Par); *id.* ¶¶ 107-116 (alleging harm from unfair competition based upon Par's alleged legitimate business expectancies with respect to existing and prospective distribution partners). Indeed, the discovery required for the unfair-competition claim is likely to be even more extensive than that for the tortious-interference claim. The unfair-competition claim will require inquiries from

15

third parties regarding whether Par's alleged *expected* business relationships were realistic. This stands in contrast to Par's tortious-interference-with-contract claim, which merely requires discovery into Par's *actual* contractual relationships. Moreover, the unfair-competition claim promises to be especially complex because "the spectrum of conduct actionable under the umbrella of unfair competition has been characterized as 'notoriously undefined.'" *Id.* at 618 (citation omitted). Undoubtedly, the contours of what constitutes "unfair" competition versus legitimate competition will be hotly disputed between Par and Mylan. Any such disputes will only further serve to delay the progress of this case, to Takeda's detriment.

In sum, the discovery necessary to address Par's state-law tort claims against Mylan is different in kind from—and far broader in scope than—the narrowly tailored discovery that is necessary to address the dispute between Takeda and Mylan. It would be unfairly prejudicial to Takeda for this Court to permit Par to intervene, as the addition of these claims would inevitably slow down the progress of this case. If Par wants to assert these claims against Mylan, Par can do so by filing a separate lawsuit. Accordingly, Par's motion for intervention should be denied.

## VI.   CONCLUSION

For at least the reasons expressed above, Takeda respectfully requests that this Court deny Par's motion to intervene in its entirety.

January 7, 2020                                         *Respectfully Submitted by*

 

Francis DiGiovanni (No. 3189)
Thatcher A. Rahmeier (No. 5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

16

*Of Counsel:*

Edgar H. Haug
Porter F. Fleming
Nicholas F. Giove
HAUG PARTNERS LLP
745 Fifth Avenue, 10th Floor
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
pfleming@haugpartners.com
ngiove@haugpartners.com

*Attorneys for Plaintiff*

17